**SO ORDERED.**

**SIGNED this 30 day of June, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

CAREMERICA, INC.,                                       CASE NO. 06-02913-8-JRL
                                                                        Chapter 7
    Debtor.


JAMES B. ANGELL, TRUSTEE,

    Plaintiff

vs.

BER CARE, INC., f/k/a PPS, Inc., Adcar,
Inc., Ann H. Day, Antonia P. Elliott f/k/a
Antonia Ferrara, Joseph Alex Cannon Jr.,
Cher Cannon, Diversified Enterprise, Inc.,
d/b/a Cannon Construction,
Cape Associates, LLC, Capital Resource
Solutions, LLC, Carolina Long Term Care,      ADVERSARY PROCEEDING
LLC, d/b/a Carolina Care, LLC, City of           NO. L-08-00174-8-JRL
Kinston, City of Wilson, Crescent State
Bank, DeltaCom, Inc., Dona H. Burrell,
First Eastern, LLC, GEMSA Loan
Services, LP, Institution Food House, Inc.,
Institutional Services, LLC, Jette Ferrell,
John F. Smith, III, Joshua Houghton,
National Assisted Living Risk Retention
Group and/or Rinklin-Shuttleworth of
Georgia, LLC, Opesnet Corporation,
Pachki, Inc., d/b/a Andy Anderson Agency,
Pinewood Associates, a General Partnership

  and/or Pinewood of Pink Hill, LLC,
Powell Properties of Durham County, LLC,
Red Mortgage Capital, Inc., Robert D.
Shelley, Dawn O. Rowland and/or Walter
D. Rowland, Saundra Etheridge, Stanley E.
Brunson, Jr., Susan W. Simms, WFY, LLC,
Robert D. Shelley d/b/a WYC, LLC, and/or
Ed Prince d/b/a WYC, LLC,

   Defendants.

## ORDER

This matter is before the court on the motion for summary judgment by defendant Carolina Long Term Care, LLC. The court held a hearing on June 18, 2009 in Raleigh, North Carolina.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## UNDISPUTED FACTS

In October 2002, Carolina Long Term Care ("CLTC") entered into a lease agreement with the debtor for certain real and personal property owned by CLTC in Greenville, North Carolina (the "Lease"). The real property served as an assisted living facility. The Lease included not just the real property but all fixtures, equipment, and automobiles owned or leased by the landlord and used at the facility. The Lease term began on October 1, 2002 and was to

run for the next fifteen years, and the debtor had the option to renew for two additional five year terms. In exchange for the use of the property, the debtor was obligated to pay monthly rent of $24,000 per month for the first nine months of the Lease, after which the monthly rent would increase up to $31,000 per month. The debtor further agreed to pay as additional rent all insurance premiums, utilities, ad valorem and other taxes and assessments, licenses and permits. In the course of the parties' dealing, the debtor would forward rent payments to BER Care, Inc. which would in turn tender the rent to CLTC. In 2005, the debtor paid monthly rent to CLTC of approximately $26,400 per month in January, March, April, June, July, and August, and paid approximately $24,000 for the month of October. The debtor apparently did not pay any rent for the months of February, May, September or November.

On November 28, 2005, the debtor delivered a "Termination Agreement" signed by Mr. Michael Elliot as president of the debtor to CLTC. The Termination Agreement acknowledged that prior rents and taxes were past due and proposed to pay the sum of $125,600 in settlement of such debt and further proposed to absolve the debtor of any future liability under the Lease. CLTC did not accept or sign the Termination Agreement, nor did the debtor pay all or any part of the proposed settlement payment. The debtor vacated the premises on or about November 30, 2005.

On September 15, 2006, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to an order entered on June 20, 2007, the debtor case was converted to one under chapter 7.

The Trustee as plaintiff filed the complaint in this adversary proceeding on September 15, 2008 against numerous defendants seeking to avoid and recover certain alleged preferential

3

and fraudulent transfers made by the debtor under 11 U.S.C. §§ 547, 548, 550 and 551. Among the transfers in question was an alleged fraudulent transfer by the debtor to defendant BER Care, Inc. and then to CLTC in the amount of $24,000 by wire transfer on October 28, 2005. On May 7, 2009, CLTC filed a motion for summary judgment.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

Section 548 of the Bankruptcy Code provides that the trustee may avoid the fraudulent transfer of an interest of the debtor in property made within two years before the petition date. 11 U.S.C. § 548(a)(1).[1] The transfer is avoidable if it was "either actually fraudulent in that it (i)

---

[1] Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the avoidance period for fraudulent transfers was the one year period prior to the petition date. Although BAPCPA extended the avoidance period for fraudulent transfers

4

had at its purpose an intent to hinder, delay or defraud the debtor's creditors, or that it was constructively fraudulent in that it (ii) was made while the debtor was in a precarious financial condition, and the transaction did not provide the debtor with a reasonably equivalent value in exchange for the item transferred." 5 Collier on Bankruptcy, ¶ 548.01 (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. Rev. 2007).  If a transfer is avoided under § 548, the trustee may recover the property transferred from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  However, a transferee may show as an affirmative defense that (1) the transfer was taken for value, in good faith, and without knowledge of its voidability; or (2) that the immediate or mediate transferee acted in good faith.  11 U.S.C. § 550(b).

      First, the court finds that summary judgment in favor of CLTC is not warranted with respect to the first prong of § 548.  Based on the allegations raised in the trustee's complaint regarding the alleged fraudulent transfer of funds through BER Care, Inc. to CLTC, and due to the fact that discovery has yet to be commenced in this adversary proceeding, the court finds that the trustee has a colorable theory under § 548(a)(1)(A) which renders summary judgment improper.  In addition, the court finds that whether CLTC had knowledge of the alleged fraudulent transfer or acted in good faith are material questions of fact precluding CLTC from

---

to two years, § 1406 of BAPCPA provided for a transition period such that the new avoidance period would apply only to those cases filed "more than one year after the date of enactment of this Act."  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, § 1406, 119 Stat 216 (2005).  BAPCPA was enacted on April 20, 2005.  The debtor in this case filed its petition on September 15, 2006.  Therefore, it appears that the avoidance period for fraudulent transfers made by the debtor is two years.  The court notes that the trustee seeks to avoid an alleged fraudulent transfer made within the one year period prior to the petition date.  The court takes the complaint as alleged and limits its focus to the alleged transfer in the amount of $24,000.00.

summary judgment relief with respect to § 550.

Second, the court finds that the trustee's claim for constructive fraud fails because the trustee conceded at hearing that the debtor received reasonably equivalent value in return for the allegedly fraudulent transfer. Under a constructive fraud claim, the plaintiff must demonstrate that at the time of the transfer the debtor received "less than a reasonably equivalent value" in return. 11 U.S.C. § 548(a)(1)(B)(i). The Bankruptcy Code defines "value" to include satisfaction of a present or antecedent debt of the debtor. 11 U.S.C. § 548(d)(2)(A). It follows that the satisfaction of an antecedent debt fails to constitute a constructively fraudulent transfer. At the time of the transfer, CLTC was owed for outstanding rent payments by the debtor as well as for the current month's rent. The transfer at issue represented a payment for rent consistent with the terms of the Lease. As a result, there is no genuine issue of material fact to support the trustee's claim of constructive fraud.

Based on the foregoing, the defendant's motion for summary judgement is ALLOWED IN PART with respect to the constructive fraud claim. Defendant's motion is DENIED IN PART with respect to the first prong of § 548 and the remaining theories of relief that depend on the resolution of the issue of actual fraud.

END OF DOCUMENT