**SO ORDERED.**

**SIGNED this 23 day of July, 2009.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

CAREMERICA, INC.,                                          CASE NO: 06-02913-8-JRL
                                                           Chapter 7

      Debtor.


JAMES B. ANGELL, TRUSTEE,

      Plaintiff

vs.

BER CARE, INC., f/k/a PPS, Inc., Adcar,
Inc., Ann H. Day, Antonia P. Elliott f/k/a
Antonia Ferrara, Joseph Alex Cannon Jr.,
Cher Cannon, Diversified Enterprise, Inc.,
d/b/a Cannon Construction,
Cape Associates, LLC, Capital Resource
Solutions, LLC, Carolina Long Term Care,
LLC, d/b/a Carolina Care, LLC, City of
Kinston, City of Wilson, Crescent State
Bank, DeltaCom, Inc., Dona H. Burrell,            ADVERSARY PROCEEDING
First Eastern, LLC, GEMSA Loan                    NO. L-08-00174-8-JRL
Services, LP, Institution Food House, Inc.,
Institutional Services, LLC, Jette Ferrell,
John F. Smith, III, Joshua Houghton,
National Assisted Living Risk Retention
Group and/or Rinklin-Shuttleworth of
Georgia, LLC, Opesnet Corporation,
Pachki, Inc., d/b/a Andy Anderson Agency,

Pinewood Associates, a General Partnership
and/or Pinewood of Pink Hill, LLC,
Powell Properties of Durham County, LLC,
Red Mortgage Capital, Inc., Robert D.
Shelley, Dawn O. Rowland and/or Walter
D. Rowland, Saundra Etheridge, Stanley E.
Brunson, Jr., Susan W. Simms, WFY, LLC,
Robert D. Shelley d/b/a WYC, LLC, and/or
Ed Prince d/b/a WYC, LLC,

       Defendants

---

## ORDER

The matters before the court are the motions to dismiss the adversary proceeding by First Eastern, LLC, Powell Properties of Durham County, LLC, Susan Simms, DeltaCom, Inc., Carolina Long Term Care, LLC, GEMSA Loan Services, Limited Partnership, Red Mortgage Capital, Inc., Stanley Brunson, Jr., Pachki, Inc. d/b/a Andy Anderson Agency, Dona H. Burrell, Cher Cannon, Joseph Alex Cannon Jr., Diversified Enterprise, Inc., John F. Smith III, OPESNET Corp., BER Care., Inc., Antonia P. Elliott, and Saundra Etheridge, the motion to amend complaint by the trustee, and the motion for severance of claims by First Eastern, LLC and Powell Properties of Durham County, LLC.  The court held a hearing on these matters on May 21, 2009 in Raleigh, North Carolina.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and

determine.

## **UNDISPUTED FACTS**

1.  On September 15, 2006, Caremerica, Inc., Caremerica Adult Care, Inc., The Meadows of Hermitage, Inc., The Meadows of Fayetteville Inc., and The Meadows of Wilmington, Inc. each filed a petition for relief under chapter 11 of the Bankruptcy Code.  These cases were subsequently converted to cases under chapter 7.  On February 4, 2008, the court entered an order allowing the substantive consolidation of the debtors and the appointment of a trustee. These consolidated cases are administered under the case of Caremerica, Inc., 06-02913-8-JRL.

2.  On the date of petition, the debtors operated adult care homes in eastern North Carolina.  The debtors leased the buildings used to operate these adult care homes.

3.  Ronald E. Burrell, Michael R. Elliott, and Susan Simms are shareholders and officers of the debtors.

4.  Ronald E. Burrell, Michael R. Elliott, and John Smith were the principal owners of BER Care, Inc. on the date of filing of this adversary proceeding.  BER Care, Inc. was formerly known as PPS, Inc.

5.  The trustee filed an adversary proceeding in this court on September 15, 2008.  The trustee sought in his complaint to avoid and recover certain alleged preferential and fraudulent transfers made by the debtors to BER Care, Inc and subsequently transferred to the defendants. The complaint contained a list of the total amounts of preferential and fraudulent transfers alleged to have been received by each defendant.  In addition, each defendant was listed as either an insider or non-insider.

6.  On December 15, 2008, the trustee filed an amended and restated complaint to avoid

3

and recover preferential and fraudulent transfers (the "Amended Complaint").  Attached to the Amended Complaint was a bank statement from a bank account in the name of PPS Inc. for the period between February 1, 2006 and February 28, 2006.

7.  On December 23, 2008, the trustee filed a motion for leave to amend his complaint.

8.  On February 5, 2009, the trustee filed an amended and restated motion to amend complaint.  Attached to this motion to amend was a new Exhibit B.  Exhibit B contained a list of each alleged transfer and included specific amounts, dates, check numbers, payee reference numbers, names of payees, account numbers and account names corresponding to each transfer.  In addition, Exhibit B included bank statements from the account of PPS, Inc. for the months of September 2005 through March 2006.

9.  Between November 4, 2008 and April 23, 2009, various defendants filed motions to dismiss for failure to state a claim upon which relief can be granted, including First Eastern, LLC, Powell Properties of Durham County, LLC, Susan Simms, DeltaCom, Inc., Carolina Long Term Care, LLC, GEMSA Loan Services, Limited Partnership, Red Mortgage Capital, Inc., Stanley Brunson, Jr., Pachki, Inc. d/b/a Andy Anderson Agency, Dona H. Burrell, Cher Cannon, Joseph Alex Cannon Jr., Diversified Enterprise, Inc., John F. Smith III, OPESNET Corp., BER Care., Inc., Antonia P. Elliott, and Saundra Etheridge (collectively, the "Movants").  On July 6, 2009, Pinewood Associates and Pinewood of Pink Hill, LLC also filed a motion to dismiss.

10.  On March 5, 2009, First Eastern, LLC and Powell Properties of Durham County, LLC filed a motion for severance of claims.

## STANDARD OF REVIEW

A pleading which states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2); FED. R. BANKR. P. 7008.   A statement showing entitlement to relief under Rule 8(a)(2) must include "enough facts to state a claim to relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); FED. R. BANKR. P. 7012(b).  In order to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)).

## ANALYSIS

### 1.  Motions to Dismiss Preference Claims

The Movants contend that the Amended Complaint fails to state a claim upon which relief can be granted and therefore should be dismissed pursuant to Rule 12(b)(6).  Specifically, the Movants assert that the Amended Complaint fails to allege facts sufficient to show why the Trustee is entitled to avoid alleged preferential transfers under § 547 of the Bankruptcy Code. The Supreme Court recently adopted a heightened pleading standard for claims for relief under Rule 8(a)(2) and the requirements for claims to survive a motion to dismiss under 12(b)(6).  Thus, the court will examine the new pleading standard for claims for relief as set forth in two recent decisions by the Supreme Court.  Next, the court will apply the new pleading requirements to the trustee's preference claims in determining whether to allow the defendants'

motions to dismiss.

Twombly, Iqbal, and Rule 8(a)(2) Pleading Standards

Prior to Bell Atl. Corp. v. Twombly, the standard for determining the sufficiency of a complaint under Rule 8(a)(2) was found in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957). The Supreme Court articulated in Conley that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S. Ct. at 102. Until recently, courts had generally embraced the liberal pleading standard in Conley when confronting motions to dismiss for failure to state a claim. See, e.g., Hatfill v. N.Y. Times Co., 416 F.3d 320, 329 (4th Cir. 2005); Kikumura v. Osagie, 461 F.3d 1269, 1294 (10th Cir. 2006); Rivera v. Rhode Island, 402 F.3d 27 (1st Cir. 2005); Cler v. Ill. Educ. Ass'n, 423 F.3d 726, 729 (7th Cir. 2005); Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004); In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 215-16 (3d Cir. 2002). However, the Supreme Court reconsidered the pleading requirements for claims for relief in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).

In Twombly, the Supreme Court granted certiorari to consider whether a complaint in an antitrust case was sufficient to overcome a Rule 12(b)(6) motion to dismiss. The complaint in Twombly alleged that certain telecommunications providers had entered into an agreement not to compete in violation of § 1 of the Sherman Act. Twombly, 550 U.S. at 551, 127 S. Ct. at 1963. Under § 1 of the Sherman Act, liability requires a "contract, combination . . ., or conspiracy, in restraint of trade or commerce." In response, the defendants moved to dismiss the complaint for

6

lack of facts showing that the alleged anticompetitive conduct arose from an agreement. Twombly at 553, 127 S. Ct. at 1964 (citing Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540, 74 S. Ct. 257 (1954)).

In considering what the plaintiff was required to plead in order to state a claim for relief under Rule 8(a)(2), the Court ruled that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly at 555, 127 S. Ct. at 1964-65 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)). Thus, in order to survive a motion to dismiss, the Court determined that the complaint must assert "plausible grounds to infer an agreement" and raise "a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly at 556, 127 S. Ct. at 1965. The Court reasoned that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" Id. at 557, 127 S. Ct. at 1966. After studying the complaint in Twombly, the Court found that allegations that the defendants had engaged in parallel conduct were insufficient to establish that an agreement between the companies was plausible "without some further circumstance pointing toward a meeting of the minds." Id. at 556, 557, 127 S. Ct. at 1966. Similarly, a bare assertion of conspiracy or agreement was merely conclusory and failed to supply facts adequate to show illegality. Id. at 557, 127 S. Ct. at 1966. In response to the plaintiffs' reliance on the liberal pleading standard set forth in Conley v. Gibson, the Court held that a literal reading of Conley would result in the survival of a "wholly conclusory statement of claim . . . whenever the pleadings left open the possibility that a plaintiff

might later establish some 'set of [undisclosed] facts' to support recovery." <u>Twombly</u> at 561, 127 S. Ct. at 1968.  Ushering an aging pleading standard out the door, the Court concluded that the "no set of facts" language in <u>Conley</u> had "been questioned, criticized, and explained away long enough . . . ." and that "this famous observation has earned its retirement." <u>Twombly</u> at 562-63, 127 S. Ct. at 1969.  Finding no facts supporting the plausible existence of an agreement between the telecommunications companies, the Court held that the complaint must be dismissed.  <u>Id.</u> at 570, 127 S. Ct. at 1974.

Following <u>Twombly</u>, it remained unclear whether the Supreme Court intended to incorporate new pleading requirements for claims for relief beyond the antitrust context. However, any ambiguity over the scope of <u>Twombly</u> disappeared when the Court rendered its decision in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (U.S. 2009).  In <u>Iqbal</u>, the plaintiff, a Pakistani Muslim, was arrested and detained by federal officials in the wake of the September 11, 2001 terrorist attacks.  <u>Iqbal</u>, 129 S. Ct. at 1942.  Subsequently, the plaintiff filed a complaint in district court against numerous federal officials, including petitioners John Ashcroft, the former Attorney General of the United States, and Robert Mueller, the Director of the Federal Bureau of Investigation, alleging that they had adopted an unconstitutional policy of detaining Muslims under harsh conditions of confinement on account of his race, religion, or national origin.  <u>Id.</u> at 1944.  The district court denied in part the defendants' motion to dismiss under 12(b)(6) and the Court of Appeals for the Second Circuit affirmed in part.  The Supreme Court granted certiorari.

In considering the defendants' motion to dismiss, the Court ruled that in order to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u> at 1949 (citing <u>Twombly</u> at 570, 127 S. Ct.

1955).  The Court explained that there were "two working principles" upon which this heightened pleading standard rested:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

Iqbal at 1949 (citing Twombly at 555, 127 S. Ct. 1955).  The Court went on to provide its definition of a plausible claim for relief:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal at 1949 (citing Twombly at 556, 127 S. Ct. 1955).  Thus, under the first prong of a Rule 8(a)(2) analysis, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal at 1950.  If the court finds well-pleaded factual allegations in the complaint, the court "should assume their veracity" and proceed to determine "whether they *plausibly* give rise to an entitlement to relief."  Iqbal at 1950 (emphasis added).  Determining whether a claim for relief is plausible is a "context-specific task" requiring the court "to draw on its judicial experience and common sense."  Iqbal at 1950 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).

In order to properly assert a violation of a clearly established right, it was necessary for the plaintiff in Iqbal to plead factual assertions showing that the defendants adopted the alleged

detention policy for the purpose of discriminating on account of race, religion, or national origin. Iqbal at 1948-49.  Under its two-pronged analysis for pleadings, the Court first separated the allegations entitled to an assumption of truth from those allegations disguised as legal conclusions.  Among the allegations set aside as legal conclusions were assertions that the defendants agreed to subject the plaintiff to harsh conditions of confinement "as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest."  Id. at 1944.  In addition, the Court found allegations that Ashcroft was the "principal architect" of the policy and that Mueller was "instrumental" in executing it to be a "formulaic recitation of the elements" of a constitutional discrimination claim that were not entitled to be assumed to be true.  Iqbal at 1951.

Next, the Court considered whether the factual allegations remaining in the complaint were facially plausible.  The complaint alleged that one of the defendants directed the FBI to arrest and detain Arab Muslim men as part of its investigation of the events of September 11.  Id. at 1944.  The complaint further alleged that the defendants carried out a policy of holding post-September-11th detainees in "highly restrictive conditions of confinement."  Iqbal at 1951-52. The Court found these allegations to be consistent with the purposeful designation of detainees based on their race, religion, or national origin, but determined that purposeful discrimination was not a plausible conclusion arising from the facts alleged.  Iqbal at 1951-52.  The Court reasoned that it was more likely that law enforcement was directed to arrest and detain individuals because of their suspected link to the terrorist attacks and that such a policy, while legitimate, would understandably "produce a disparate, incidental impact on Arab Muslims . . . ." Iqbal at 1951.  In addition, the Court found unpersuasive the plaintiff's assertions that detainees

were held under harsh conditions based on their race, religion, or national origin.  Id. at 1952.

Rather, the allegation that defendants adopted a policy of holding detainees under restrictive

conditions of confinement merely suggested that federal officials "sought to keep suspected

terrorists in the most secure conditions available."  Id.  Finding no factual allegations that would

plausibly show that the defendants possessed unconstitutional motives, the Court held that the

complaint failed to state a claim upon which relief could be granted.  Iqbal at 1954.

Pleading Standard for § 547 Claims in Valley Media

In light of the Supreme Court's decision in Iqbal, the court must determine what pleading

requirements the trustee must satisfy when asserting a claim for the avoidance of transfers

alleged to be preferential under § 547.  In considering whether the Trustee's claim for relief is

sufficient, the Movants assert that the court should espouse the pleading standards for

preferential transfers adopted by the Bankruptcy Court for the District of Delaware in In re

Valley Media, Inc., 288 B.R. 189 (Bankr. D. Del. 2003).

In Valley Media, the plaintiff alleged in its complaint that the defendant received

preferential payments during the 90-day preference period in the amount of "not less than

$624,627.18" and further alleged that such transfers were avoidable under § 547.  Valley Media,

288 B.R. at 191.  The defendant moved to dismiss the plaintiff's preference claims under Rule

12(b)(6).  Id.  In granting the defendant's motion to dismiss, the Court found that the complaint

failed to provide fair notice to the defendant and lacked a sufficient showing of entitlement to

relief as required under Rule 8(a)(2).  Id. at 192.  In addition, Judge Walsh ruled that in order to

overcome a 12(b)(6) motion to dismiss, a complaint to avoid a preferential transfer must include:

(a) an identification of the nature and amount of each antecedent debt and

11

(b) an identification of each alleged preference transfer by (i) date, (ii) name of

debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.

Id. The Court granted the motion to dismiss but allowed the plaintiff leave to file an amended

complaint. Id.

Shortly after the Valley Media decision, another judge of the Delaware Bankruptcy Court

revisited the pleading standards for § 547 preference claims in In re The IT Group, Inc., 313 B.R.

370, 373-74 (Bankr. D. Del. 2004). In IT Group, the issue before the Court was whether a

complaint asserting a preferential transfer could survive a 12(b)(6) motion to dismiss when the

complaint identified the specific amount, date, and number of the transfer. IT Group, 313 B.R.

at 374. In a departure from the heightened pleading standard adopted by Judge Walsh in Valley

Media, Judge Lindsey stressed that the notice pleading standard of Rule 8(a)(2) merely required

that the complaint provide "fair notice of what the plaintiff's claim is and the grounds upon

which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).

Finding the requirements for initial pleadings imposed by Valley Media "inappropriate and

unnecessarily harsh," Judge Lindsey held that the preference complaint identifying the amount,

date, and number of the transfer "clearly provided fair notice of Plaintiff's claim" and denied the

defendant's motion to dismiss. IT Group at 373-74.

Subsequent to Valley Media and IT Group, Judge Walsh again examined the

requirements for initial pleadings with respect to § 547 claims in In re Oakwood Homes Corp.,

340 B.R. 510 (Bankr. D. Del. 2006). Like in Valley Media and IT Group, the defendants in

Oakwood Homes filed motions to dismiss on the grounds that the complaint failed to satisfy the

pleading requirements of Rule 8(a)(2). Oakwood Homes, 340 B.R. at 521. Applying the test

from <u>Valley Media</u>, Judge Walsh first considered whether the complaint identified the nature and amount of the antecedent debt. In addition to precise dates and amounts of each transfer, the complaint provided the details of the relationship between the debtors and the defendants and stated that many of the transfers arose out of a loan assumption program. <u>Id.</u> at 522. The Court found this information sufficient to identify the nature and amount of the antecedent debt. <u>Id.</u> Second, the Court considered whether the complaint provided fair notice of the identities of the transferors. The transferors identified in the complaint included the debtors and all of their non-debtor subsidiaries and affiliates. <u>Id.</u> Although the complaint failed to precisely identify all of the transferors' names, the Court found that the transferors operated as a unit with minimal distinctions between the debtor and non-debtor entities. As a result, the Court held that the complaint gave "fair notice as to their identities." <u>Id.</u> Third, the Court addressed the sufficiency of allegations that the defendants were insiders of the debtors. The complaint alleged that the defendants were insiders because they were "in control of the debtor," affiliates, and "managing agents" of the debtors. <u>Id.</u> at 524. The Court concluded that the complaint alleged a relationship that enabled the defendants to dominate and control the debtors, in satisfaction of Rule 8(a)(2), and authorized further discovery to determine insider status. <u>Id.</u> Finding the claims for preferential transfers sufficient to satisfy Rule 8(a), the Court denied the defendants' motions to dismiss. <u>Id.</u> at 523-24.

Notwithstanding the competing views on pleading standards for preference claims within the Delaware Bankruptcy Court, the majority of courts which have addressed the pleading requirements for § 547 claims have required something less than the standard implemented in <u>Valley Media</u> to survive a 12(b)(6) motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>In re Allou Distribs., Inc.</u>, 387

B.R. 365, 405 (Bankr. E.D.N.Y. 2008) (preference claim identifying the transferor and transferee, check number, date, and amount was sufficient); In re NM Holdings Co., LLC, 376 B.R. 194, 204 (E.D. Mich. 2007) (complaint identifying the names of transferors and transferees, the form of transfers, and their total amount met Rule 8(a)'s "liberal" pleading requirements); In re Randall's Island Family Golf Ctrs., Inc., 290 B.R. 55, 65 (S.D.N.Y. 2003) ("a preference complaint may provide a defendant with fair notice of the claim despite the lack of information required by Valley Media").  However, these cases were decided prior to the Supreme Court's implementation of more stringent pleading requirements for claims for relief under Rule 8 of the Federal Rules of Civil Procedure.

Pleading Standard for § 547 Claims after Twombly and Iqbal

　　　Under Twombly and Iqbal, the complaint of the trustee must satisfy a two-pronged test. The court must therefore determine whether the trustee has pleaded sufficient factual allegations to establish a § 547 preference claim for relief that is plausible.[1]  Because a preference cause of

---

[1]Section 547(b) provides:

   (b) Except as provided in subsection (c) and (i) of this section the trustee may avoid any transfer of an interest of the debtor in property –
     (1) to or for the benefit of a creditor;
     (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
     (3) made while the debtor was insolvent;
     (4) made –
         (A) on or within 90 days before the date of the filing of the petition; or
         (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
     (5) that enables such creditor to receive more than such creditor would receive if
         (A) the case were a case under chapter 7 of this title;
         (B) the transfer had not been made; and
         (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

action consists of several elements, the court will address each element in turn.

A.  Transfer of an Interest of the Debtor in Property

Section 547(b) provides that a trustee may avoid "any transfer of an interest of the debtor in property . . . ."  11 U.S.C. § 547(b).  The trustee alleged in his Amended Complaint that the debtors transferred funds by and through bank accounts of BER Care, Inc., which was formerly known as PPS, Inc. (the "PPS/BER Care bank accounts") as a conduit through which funds were distributed to the defendants.  The Amended Complaint further asserted that the debtors made such transfers for the purpose of protecting their own bank accounts from attachment or garnishment by creditors.  In support of these assertions, the trustee filed Exhibit B as a supplement to the Amended Complaint.  Included in Exhibit B were copies of bank statements of PPS/BER Care for the months in which the transfers were allegedly made.  These bank statements contained the method, date, and amount of each transfer flowing out of PPS/BER Care bank accounts.  Exhibit B also contained a table prepared by the trustee which identified the dates and amounts of transfers received by each defendant (the "Table of Transfers").  However, although the bank statements and Table of Transfers in Exhibit B lend sufficient factual support to the allegation that various transfers were made from PPS/BER Care bank accounts to the defendants, avoidance under § 547 is limited to "a transfer of *an interest of the debtor in property*."  11 U.S.C. § 547(b) (emphasis added).  Therefore, a claim for relief under § 547 must assert facts showing that the debtors had an interest in the property exchanging hands.

Upon review of the Amended Complaint and Exhibit B, the court finds insufficient facts to support the trustee's contention that the funds flowing through BER Care, Inc. originated with the debtors.  The assertion that "the debtors transferred its (sic) funds into bank accounts

operated by the debtors' principals" is merely a conclusory statement that lacks factual support. Similarly, the trustee provides little factual basis for his assertion that "one or more of the debtors, or, in the alternative, the consolidated debtor . . . made certain transfers to such defendant in at least the amount listed beside such defendant's name . . . ." Exhibit B provides a list of the transferees, amounts, and dates of each transfer, but fails to indicate what entity initiated each transfer.

Turning to those factual allegations which tend to support the trustee's claim, the court finds that the allegation that the debtors were "subject to the dominion and control" of Ronald E. Burrell and Michael R. Elliott, who were also the principal owners of BER Care, Inc., fails to give rise to a reasonable inference that the debtors transferred funds to BER Care, Inc. Similarly, although the PPS/BER Care bank statements provide the dates and amounts of each credit into the account, there is no indication as to the source of such funds. Without more factual support, there is nothing in the Amended Complaint or Exhibit B to rebut the alternative and reasonable possibility that the funds flowing through BER Care, Inc. originated from sources other than the debtors. For example, the fact that BER Care, Inc. is a business corporation owned by Ronald E. Burrell, Michael R. Elliott, and John Smith gives rise to a plausible conclusion that the transfers at issue came directly from individual accounts owned by Mr. Burrell, Mr. Elliott, or Mr. Smith. It follows that the allegations by the trustee regarding transfers of interests of the debtors in property fail to meet the plausibility standard necessary to overcome a 12(b)(6) motion to dismiss.

B. To or for the Benefit of a Creditor

Count I of the Amended Complaint asserts that "each preferential transfer was made to or

16

for the benefit of the defendant as a creditor of the transferor." Count III provides that "each preferential transfer was made to or for the benefit of defendant BER Care, Inc. as a creditor of the transferor." Additionally, the trustee alleged in his Amended Complaint that the debtors disbursed funds through PPS/BER Care bank accounts to the defendants. In support of these assertions, the trustee provided information with respect to each alleged transfer, including dates, amounts, and names of transferees (including the Movants).

The court finds that the information provided in the Table of Transfers, including the names of transferees and the dates and amounts of each transfer, is sufficient to plausibly assert that funds were transferred to the Movants. The court further finds that each transferee's identity as a creditor is contingent on the existence of an antecedent debt, which is the next element of a preference claim.

C. For or on Account of an Antecedent Debt

Section 547(b)(2) requires that a preferential transfer must be "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). In Valley Media, the Delaware Bankruptcy Court held that "the nature and amount of the antecedent debt" was necessary to show entitlement to relief under a preferential transfer theory. Valley Media, 288 B.R. at 192. This court agrees that the trustee must assert the nature and amount of the antecedent debt in order to allege a plausible claim for relief. In the case at bar, the Amended Complaint makes the conclusory assertion that each preferential transfer was made "for, or on account of, an antecedent debt owed by the Transferor to the Defendant before the transfer was made." However, the trustee fails to assert facts supporting the existence of an antecedent debt owed by the debtors to the defendants. In order to satisfy the pleading

requirements under <u>Iqbal</u>, the court finds that the trustee is obligated to allege facts regarding the nature and amount of the antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt.

D. Made while the Debtor was Insolvent

The avoidance of a preferential transfer is contingent on the debtor being insolvent on the date of the transfer.  11 U.S.C. § 547(b)(3).  Under § 101(32)(A) of the Bankruptcy Code, a debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ."  11 U.S.C. § 101(32)(A).  In <u>In re Troll Commc'ns</u>, 385 B.R. 110 (Bankr. D. Del. 2008), the Delaware Bankruptcy Court considered whether a trustee adequately alleged the debtors' insolvency in its claims for avoidance and recovery of preferential and fraudulent transfers.  <u>Troll Commc'ns</u>, 385 B.R. at 124.  The complaint in <u>Troll Commc'ns</u> contained a valuation of the debtors' accounts payable and other liabilities, as well as a negative valuation of the debtors' tangible net worth.  In addition, the trustee provided notes from the debtors' accountant expressing the unlikelihood that the debtors could continue as a going concern.  <u>Id.</u> at 114.  The Court found that the financial data in the complaint supported the trustee's allegations that the debtors had a negative net worth and were unable to meet maturing obligations leading up to their bankruptcy filings.  <u>Id.</u> at 124.  As a result, the Court found sufficient factual allegations of insolvency to permit the trustee to proceed with discovery. <u>Id.</u>

In the case at bar, the court finds that the allegations of the debtors' insolvency on the dates of the alleged transfers fall short of the plausibility threshold.  The Bankruptcy Code provides that the trustee may presume a debtor to be insolvent within the 90-day period

immediately preceding the date of the bankruptcy filing.  11 U.S.C. § 547(f).  However, this presumption is inapplicable to preferential transfers to insiders made outside of the 90-day period.  Because a debtor must be insolvent on the date of the transfer in order for the trustee to be successful in a claim based on § 547(b), it follows that the trustee must allege facts sufficient to show that such insolvency is plausible.  In this case, the trustee asserts that "[e]ach preferential transfer was made while the [t]ransferor was insolvent."  Without factual assertions in support of the debtor's insolvency, however, the trustee's conclusory statement fails to satisfy the first prong under Iqbal.  It follows that the trustee has failed to assert a claim supporting entitlement to relief.  E.  Within 90 Days, or Within One Year if the Creditor was an Insider

The date on which the alleged transfer occurred is critical to ascertaining whether the transfer is subject to avoidability under § 547.  Generally, a transfer is avoidable under § 547 if it was made within the 90-day period before the date of the filing of the petition.  11 U.S.C. § 547(b)(4)(A).  However, if the claimant alleges that the creditor receiving the benefit of the transfer was an insider, the transfer is avoidable if it occurred between 90 days and one year prior to the petition date.  Id. § 547(b)(4)(B).  The trustee asserts in his Amended Complaint that transfers were made "to each Defendant who is alleged to be an Insider . . . during the one year period prior to the petition date . . . ."  With respect to the timing of the transfers, the trustee's assertion is, on its own, a mere recitation of the elements comprising § 547(b)(4)(B).  However, supplemental Exhibit B contains the exact dates and amounts of each transfer and the court finds such information sufficient to show that it is plausible that the alleged transfers occurred within the preference period.

With respect to the allegation that certain defendants were insiders, the Delaware

19

Bankruptcy Court considered the sufficiency of allegations that an insider relationship existed between transferees and the debtors in In re Oakwood Homes.[2]  In Oakwood Homes, the Delaware Bankruptcy Court considered whether a preference claim alleging that defendants were insiders was sufficient to overcome a motion to dismiss.  In re Oakwood Homes, 340 B.R. 510 (Bankr. D. Del. 2006).  The complaint in Oakwood Homes alleged that the defendants were insiders because they were "in control of the debtors," affiliates, and "managing agents" of the debtors.  Id. at 524.  In addition, the complaint described the relationships between the debtors and the defendants.  Id. at 522.  Acknowledging that it was obligated to accept as true "all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," the Court determined that the complaint alleged a relationship in which the defendants dominated and controlled the debtors.  Id. (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  As a result, the Court determined that the complaint alleged an adequate factual basis in support of the assertion that the defendants were insiders.  Oakwood Homes at 524.

In the case at bar, the Amended Complaint includes a list of transferees and specifies which transferees are alleged to be insiders.  However, the mere labeling of transferees as insiders is not enough to establish a reasonable inference of insider status.  Unlike the complaint in Oakwood Homes, the Amended Complaint provides few details regarding the relationship between the debtors and the defendants.  Importantly, the Amended Complaint also fails to

---

[2]Although In re Oakwood Homes was decided prior to Twombly and Iqbal, it incorporates the Valley Media standard for pleadings in determining whether the complaint satisfied Rule 8(a)(2).  While Valley Media has been distinguished or ignored by the majority of bankruptcy courts both nationwide as well as in Delaware, this court believes that the decisions by the Supreme Court in Twombly and Iqbal breathe new life into the pleading requirements implemented in Valley Media for § 547 preference claims.  As such, the court finds persuasive cases such as Oakwood Homes which apply the Valley Media pleading standard.

address in what capacity the defendants are insiders of the debtors.  The trustee's assertion that the defendants "are insiders as that term is defined in § 101(31) and used in § 547(b)" is conclusory and insufficient without supporting facts.  In summary, the court finds that a § 547 preference claim alleging insider status must include the basis for asserting that a defendant qualifies as an insider under § 101(31) and facts showing that the alleged relationship is plausible.

F.  Enabled Creditor to Receive More than it would under Chapter 7

Under § 547(b)(5), avoidance is also contingent on the trustee establishing that the alleged preferential transfer enabled the transferee to receive more than it would have under chapter 7.  "Section 547(b)(5) is a central element of the preference section because it requires a comparison between what the creditor actually received and what it would have received under [chapter 7]."  5 Collier on Bankruptcy, ¶ 547.03[7] (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. rev.).  Generally, as long as the distribution to general unsecured creditors would be less than 100%, any payment to such a creditor during the preference period would enable the creditor to receive more than it would in a liquidation had the payment not been made.  Id.; see also In re Virginia-Carolina Fin. Corp., 954 F.2d 193, 199 (4th Cir. 1992).  Thus, in a situation where the alleged preferential transferee is an unsecured nonpriority creditor, the trustee must show that the distribution to all such creditors in a chapter 7 liquidation would be less than 100%.  Under Rule 8(a)(2), and in light of the heightened pleading standard expressed in Iqbal, the trustee is obligated to support his allegation with facts showing that it is plausible that creditors would receive less than a 100% payout in a liquidation.  The court finds that the debtors' summary of schedules, reflecting liabilities far greater than assets, is sufficient to satisfy

the trustee's pleading requirement.  See Precision Walls, Inc. v. Crampton, 196 B.R. 299, 303 (E.D.N.C. 1996) (summary of schedules demonstrating that liabilities exceeded assets was sufficient to support the bankruptcy court's finding that unsecured creditors would receive less than 100% on their claims).

The trustee raises several arguments in opposition to the court's adoption of the heightened pleading standard for claims for relief.  First, the trustee argues that the new pleading requirements impose an undue burden on the trustee to supplement each element of its cause of action with factual support.  In response, the court admits that claims for relief are more difficult to plead sufficiently following Twombly and Iqbal.  However, the trustee is certainly more likely to have access to this information than the antitrust plaintiffs in Twombly or the Pakistani detainee in Iqbal.  If these claimants were held to a heightened pleading standard, so too can a trustee in bankruptcy.  After all, the trustee has theoretically had all of the books and records of the debtors for up to two years prior to bringing these causes of action, with the full discovery powers of the court through 2004 exams and other means available during that time.

Second, the trustee argues that the Supreme Court considered special discovery issues in Twombly and Iqbal which are not applicable to the case at bar.  The trustee asserts that the Supreme Court in Twombly was concerned with the expense of discovery in antitrust litigation and argues that Iqbal was similarly unique because the defendants were government officials entitled to qualified immunity and protection from the burdens of litigation.  The trustee argues that the discovery issues raised in Twombly and Iqbal are not applicable to cases under § 547 and contends that he should not be subject to the heightened pleading standard in Iqbal or the requirements imposed in Valley Media.

The court finds that the trustee is incorrect in asserting that Twombly and Iqbal are limited in application to cases with special discovery issues.  The Supreme Court in Twombly signaled the retirement of the "no set of facts" standard in Conley v. Gibson, and reiterated in Iqbal that a claim's survival on a 12(b)(6) motion was contingent on the inclusion of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal at 1949.  The holdings in Twombly and Iqbal were not unique to those cases; rather, the standard for pleadings set forth by the Supreme Court are applicable to all claims for relief under Rule 8(a) of the Federal Rules of Civil Procedure.

## 2.  Motions to Dismiss Fraudulent Transfer Claims

In addition to claims to avoid preferential transfers, the trustee's complaint seeks to avoid alleged fraudulent transfers incurred within the two-year period prior to the petition date of the debtor.  In response, the Movants contend that the trustee's claims to avoid alleged fraudulent transfers fail to satisfy necessary pleading requirements.  Section 548 of title 11 allows the trustee to avoid fraudulent transfers of an interest of the debtor in property incurred within 2 years before the date of the filing of the petition.  11 U.S.C. § 548(a)(1).  Such transfers may be founded on actual fraud or constructive fraud.  Id. § 548(a)(1)(A), (B).  Under § 548(a)(1), a transfer is avoidable if it was either actually fraudulent in that it "(i) had at its purpose an intent to hinder, delay or defraud the debtor's creditors," or that it was constructively fraudulent in that it "(ii) was made while the debtor was in a precarious financial condition, and the transaction did not provide the debtor with a reasonably equivalent value in exchange for the item transferred." 5 Collier on Bankruptcy, ¶ 548.01 (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. rev.). The Movants allege that the trustee's fraudulent transfer claims must be dismissed for failure to

plead sufficient facts to support either actual or constructive fraud.

First, the Movants contend that the Amended Complaint fails to satisfy the heightened pleading standard for actual fraud provided in Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b), made applicable by Rule 7009 of the Federal Rules of Bankruptcy Procedure, requires a party alleging fraud to "state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b); FED. R. BANKR. P. 7009.  However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.  A claim alleging an actual fraudulent transfer under § 548 must satisfy the particularity requirement of Rule 9(b). See In re Derivium Capital, LLC, 380 B.R. 429, 439 (Bankr. D.S.C. 2006) (citing In re Verestar, Inc., 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006)).  The Movants argue that the Amended Complaint fails to identify and describe the fraudulent circumstances on which the trustee's claims are founded. In response, the trustee admits that his claims to avoid fraudulent transfers under § 548(a)(1)(A) are subject to the Rule 9(b) standard for pleading but argues that the particularity requirement of Rule 9(b) is relaxed as applied to him because he is a third party with secondhand knowledge and limited access to information at the pleading stage.

The court finds that the trustee's claims to avoid actual fraudulent transfers pursuant to § 548(a)(1)(A) satisfy the particularity requirement of Rule 9(b).  The Amended Complaint asserts that the debtors transferred funds into a bank account operated by the principals of the debtors and in the name of a non-debtor entity, BER Care, Inc., for the purpose of hindering creditors from attaching or garnishing the debtors' bank accounts, including the Internal Revenue Service, which allegedly notified the debtors of its intent to levy and garnish their accounts.  Exhibit B to the Amended Complaint further provides the dates, amounts, and names of transferees with

24

respect to each alleged fraudulent transfer.  The court finds that the allegations in the Amended Complaint and Exhibit B comply with Rule 9(b)'s pleading requirements for actual fraud.

Second, the Movants contend that the trustee has failed to sufficiently plead allegations of constructive fraud pursuant to § 548(a)(1)(B).  Section 548(a)(1)(B) allows for the avoidance of certain transfers in which the debtor "received less than reasonably equivalent value" and either (I) was or became insolvent on the date of the transfer; (II) became insufficiently capitalized following the transfer; (III) intended to incur debts that would be beyond its ability to repay; or (IV) made such transfer for the benefit of an insider under an employment contract and not in the ordinary course of business.  11 U.S.C. § 548(a)(1)(B).  Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.  In re Derivium Capital, LLC, 380 B.R. 429, 439 (Bankr. D.S.C. 2006) (citing In re Verestar, Inc., 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006)).  Rather, § 548(a)(1)(B) claims must satisfy Rule 8(a) and contain a short and plain statement showing entitlement to relief.  Under Iqbal, it follows that claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible.

The Amended Complaint alleges that, with respect to transfers alleged to be fraudulent, the transferors "received less than reasonably equivalent value in exchange from the defendant for such fraudulent transfer."  The Amended Complaint also alleges that these transferors were "insolvent on the date of each fraudulent transfer or became insolvent as a result of the fraudulent transfer."  The court finds that the trustee's allegations mirror the elements of § 548(a)(1)(B).  However, the trustee fails to support such allegations with factual assertions other

25

than dates, amounts, and names of transferees included in Exhibit B.  Missing from the Amended Complaint is an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, and facts supporting the debtors' insolvency at the time of the transfer.  In the absence of such factual assertions, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard.

### 3.  Motion to Amend and Relate Back

The trustee moves to amend his complaint against the defendants to include particular facts and clarify his claims for relief under §§ 547, 548, and 550.  Attached to the trustee's motion to amend is Exhibit B, consisting of a summary of the alleged transfers and their dates, amounts, and names of transferees, as well as PPS/BER Care bank statements for the months of September 2005 through March 2006.  In addition, the trustee requests that the proposed amendment relate back to the date of the original complaint.

In response, defendants John Smith III, Jette Ferrell, Joseph and Cher Cannon, Dona Burrell, Susan Simms, Stanley Brunson, Jr., First Eastern, Powell Properties, and BER Care, Inc. filed objections to the trustee's motion.  These objecting defendants argue that the proposed amendment is futile because it fails to rectify the deficiencies in the original pleading.  Specifically, the proposed amendment fails to identify the names of transferors, antecedent debts, or the grounds why the defendants are insiders.  Additionally, the objecting defendants contend that the allegations do not amount to fraud.  Further, the objecting defendants argue that the original complaint failed to reveal the conduct, transactions, or occurrences alleged in the amendments.  Finally, the objecting defendants argue that the statute of limitations applicable to the trustee's complaint precludes amendment.  As a result, the objecting defendants argue that

the amendments must not relate back.

Rule 15 of the Federal Rules of Civil Procedure authorizes a party to amend a pleading with the court's leave.  FED. R. CIV. P. 15(a)(2); FED. R. BANKR. P. 7015.  Leave to amend pleadings "shall be freely given when justice so requires" and should be granted absent prejudice to the opposing party, bad faith on the part of the moving party, or futility of amendment. Hutson v. Greenwich Ins. Co. (In re E-Z Serve Convenience Stores, Inc.), 2005 Bankr. LEXIS 3074 (Bankr. M.D.N.C. 2005) (citing Nolte v. Capital One Fin. Corp., 390 F.3d 311, 317 (4th Cir. 2004)).  Here, the opposing parties are not prejudiced by the trustee's request to amend.  In fact, the trustee's amendment supplements the original complaint with information which may assist the defendants in asserting affirmative defenses to the trustee's claims.  Further, the court finds that the trustee has acted in good faith and that amendment is not futile.  The information contained in the trustee's motion to amend provides necessary factual support to the trustee's claims.  In light of the heightened pleading standard recently adopted by the Supreme Court, the court grants the trustee leave to amend his pleadings to adhere to the new pleading requirements for preferential and fraudulent transfers.

The trustee also requests that his amended claims relate back to the date of the original complaint.  An amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  FED. R. CIV. P. 15(c)(1)(B); FED. R. BANKR. P. 7015.  Relation back is contingent on the court determining that there is a factual nexus between the amendment and the original claim and that the defendants had notice of the claim and will not be prejudiced by the amendment.  In re E-Z Serve

27

Convenience Stores, Inc. at 8-9 (citing Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983)).

First, relation back is proper because there is a factual nexus between the amended claim and the original complaint.  The purpose of the amendment is to supplement the original complaint by adding bank statements of the immediate transferee and a table providing dates, amounts, and names of transferees.  The court finds that the amendment clarifies the original complaint by providing more detail regarding the transfers from the debtors and through BER Care, Inc. to the defendants.

Second, the defendants had sufficient notice of the amended claim based on the allegations in the original complaint.  The original complaint alleged preferential and fraudulent transfers by the debtors through BER Care, Inc. as a conduit to the defendants.  The original complaint provided the total of amounts transferred to each defendant and specified under what theories the trustee sought to avoid the transfers.  In comparison, the proposed amendment specifies the dates and amounts of each transfer to the defendants.  The amendment neither includes new transfers nor adds new defendants.  It follows that the amended claim is based on the same transactions or occurrences set forth in the original complaint.

At hearing, counsel for Joseph and Cher Cannon, Diversified Enterprise, Inc., and Dona Burrell argued that the original complaint's failure to satisfy the pleading standards in Twombly and Iqbal precluded the trustee from amending his complaint after the statute of limitations had run.  The court disagrees.  Relation back of a proposed amendment is not contingent on the original complaint satisfying the pleading standard contained in Rule 8(a)(2).  See Davis v. Piper Aircraft Corp., 615 F.2d 606, 611-12, n. 8 (4th Cir. 1980) ("It is clear that under federal law the failure to have stated a claim under Rule 8(a)(2) is no impediment to the

later allowance of an amendment having relation back effect . . . ."); see also FED. R. CIV. P. 15(d) (permitting a party to serve a supplemental pleading "even though the original pleading is defective in stating a claim or defense."). In addition, Rule 15(c) requires that the transaction or occurrence must be "set out – or attempted to be set out" by the original pleading. Because the court finds that the proposed amendment asserts a claim arising out of the transactions or occurrences set out in the original pleading, relation back under Rule 15(c) is proper.

**4. Motion for Severance of Claims**

Defendants First Eastern, LLC ("First Eastern") and Powell Properties of Durham, LLC ("Powell Properties") move for severance of their claims pursuant to Rule 21 of the Federal Rules of Civil Procedure. Rule 21 provides that the court may "sever any claim against a party." FED. R. CIV. P. 21; FED R. BANKR. P. 7021. First Eastern and Powell Properties assert that the trustee's claims against them are not related to claims against other defendants in this adversary proceeding. First Eastern and Powell Properties argue that the inclusion of numerous unrelated claims against unrelated defendants would work an undue hardship on them and would require the expenditure of substantial time and money to participate in every proceeding involving all of the defendants. In addition, First Eastern and Powell Properties argued at hearing that they anticipated significant discovery in this adversary proceeding and that there was no reason for every attorney to be present at every deposition related to the case. Also at hearing, counsel for defendants John Smith III and Susan Simms argued that consolidating the trustee's claims would unduly burden the defendants and their attorneys.

Conversely, the trustee argues that the joinder of the defendants in a single adversary proceeding is permitted under Rule 20 of the Federal Rules of Civil Procedure. Rule 20 allows

for the permissive joinder of defendants in a single action if:

> (A) any right to relief is asserted against [the defendants] jointly, severally, or in the
> alternative with respect to or arising out of the same transaction, occurrence, or series of
> transactions or occurrences; and (B) any question of law or fact common to all
> defendants will arise in the action.

FED. R. CIV. P. 20(a)(2); FED. R. BANKR. P. 7020.  The trustee asserts that BER Care, Inc. is a
necessary party to the claims against the defendants and argues that a mediate transferee's
liability is comparable to joint and several liability of joint tortfeasors.  The trustee further
asserts that the transfers to BER Care, Inc. present common legal and factual issues as to all of
the defendants.  Additionally, the trustee argues that a consolidation of claims promotes judicial
efficiency.  From a procedural standpoint, the trustee agrees with the proponents of severing that
it is unnecessary for all defendants to be involved in every aspect of discovery.  At hearing, the
trustee recommended that the trials be separated with respect to each defendant once the issues
regarding avoidability of transfers to the immediate transferee, BER Care, Inc., have been
determined.

The court is empathetic to the concerns regarding time and expense expressed by the
defendants seeking severance of claims.  However, the court finds that severance is not
necessary with respect to the trustee's claims to avoid alleged preferential and fraudulent claims.
Under Rule 20 of the Federal Rules of Civil Procedure, the court may issue orders protecting
parties from "expense, or other prejudice that arises from including a person against whom the
party asserts no claim and who asserts no claim against the party."  FED. R. CIV. P. 20(b); FED. R.
BANKR. P. 7020.  In the case at bar, the court finds that the defendants' concerns will be

alleviated by bifurcating the adversary proceeding.  First, the court will address the trustee's

claims under §§ 547 and 548 to avoid alleged preferential and fraudulent transfers to immediate

transferee BER Care, Inc.  Participation in this first stage by defendants other than BER Care,

Inc. shall be discretionary.  Once the issues in the first stage have been decided, any claims to

recover transfers pursuant to § 550 will be adjudicated.

**5.  Conclusion**

Based on the foregoing,

(1) The Movants' motions to dismiss the trustee's claims to avoid alleged preferential

transfers, contained in Counts I and III of the Amended Complaint, are GRANTED.  The

Movants' motions to dismiss the trustee's claims to avoid alleged fraudulent transfers under §

548(a)(1)(B), contained in Counts II and IV of the Amended Complaint, are GRANTED.

However, the court grants permission for the trustee to re-plead his claims against the defendants

under the pleading standards expressed in this order.

(2) The Movants' motions to dismiss the trustee's claims to avoid alleged fraudulent

transfers under § 548(a)(1)(A), contained in Counts II and IV of the Amended Complaint, are

DENIED.  The court finds that the trustee has alleged sufficient information to satisfy the

pleading standard for actual fraud provided in Rule 9(b).

(3) The trustee's motion to amend and relate back is GRANTED.  The trustee shall have

30 days from the date of this order in which to file a second amended complaint.  Once the

trustee has filed his second amended complaint, the defendants will have 20 days in which to

answer.

(4) The motion to sever claims is GRANTED in part.  The trustee's claims for recovery

31

of transfers under § 550 are stayed pending adjudication of the claims to avoid transfers to BER

Care, Inc. pursuant to §§ 547 and 548.  Once the issues regarding avoidance of transfers to BER

Care, Inc. have been decided, the claims remaining against the defendants under § 550 shall be

adjudicated.


"END OF DOCUMENT"