**SO ORDERED.**

**SIGNED this 2 day of May, 2013.**

_____

**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

| | |
|---|---|
| IN RE: | |
| CAREMERICA, INC, | CASE NO. 06–02913–8–JRL |
| DEBTOR. | CHAPTER 7 |
| | |
| JAMES B. ANGELL, CHAPTER 7 TRUSTEE, | |
| PLAINTIFF, | |
| v. | ADVERSARY PROCEEDING NO. 08–00174–8–JRL |
| BER CARE, INC. F/K/A PPS, INC., ADCAR, INC., CAROLINA LONG TERM CARE, LLC D/B/A CAROLINA CARE, LLC, CITY OF KINSTON, CITY OF WILSON, FIRST EASTERN, LLC, INSTITUTION FOOD HOUSE, INC., PINEWOOD ASSOCIATES, A GENERAL PARTNERSHIP AND/OR PINEWOOD OF PINK HILL, LLC, POWELL PROPERTIES OF DURHAM COUNTY, LLC, STANLEY E. BRUNSON, JR., | |
| DEFENDANTS. | |

1

**ORDER**

This matter came before the court on the cross motion for summary judgment filed by James B. Angell ("trustee") in response to the motion for partial summary judgment filed by First Eastern, LLC ("First Eastern") and Powell Properties of Durham County, LLC ("Powell Properties of Durham") in the above–captioned adversary proceeding.[1]

Caremerica, Inc. ("Caremerica") was a corporation formed by Ronald Burrell ("Burrell") and Michael Elliott ("Elliott") on January 5, 2000, which owned and managed various assisted living facilities in eastern North Carolina.[2] Burrell was Caremerica's chief executive officer and Elliott was its chief financial officer. Caremerica, located in Leland, North Carolina, provided management services for approximately twenty assisted living facilities and maintained a centralized operating account from which all of the managed entities' obligations were paid.

Burrell and Elliott formed PPS, Inc. ("PPS") and Partners Pharmacy Service, Inc. ("Partners Pharmacy Service") on January 8, 2003 and January 9, 2003, respectively. PPS was a pharmacy, owned primarily by Burrell and Elliott, whose operations included the sale of medication to the

---

[1] On April 3, 2013, this court entered an order allowing the trustee's motion for approval of a compromise reached with First Eastern and Powell Properties of Durham. Execution of the mutual release by First Eastern and Powell Properties of Durham in connection with the compromise renders their pending motion for partial summary judgment moot and, therefore, it is denied.

[2] In addition to Caremerica, Burrell and Elliot also formed Caremerica–West, Inc., Caremerica Adult Care, Inc. ("Caremerica Adult Care"), Caremerica of Pink Hill, Inc., Caremerica of Burgaw, Inc., The Meadows of Fayetteville, Inc. ("The Meadows of Fayetteville"), The Meadows of Hermitage, Inc. ("The Meadows of Hermitage"), The Meadows of Lake Waccamaw, Inc., The Meadows of Laurinburg, Inc., The Meadows of Mt. Olive, Inc., The Meadows of Red Oak, Inc., The Meadows of Wilmington, Inc. ("The Meadows of Wilmington"), and the Meadows of Wilson, Inc. between 2001 and 2002. These entities were created to lease and operate assisted living facilities in eastern North Carolina and South Carolina.

various entities managed by Caremerica. On March 24, 2005, Partners Pharmacy Service merged with PPS, which left Burrell and Elliott owning sixty percent of the resulting corporation, PPS. On March 31, 2005, the assets of PPS were sold to Omnicare for approximately $25,000,000.00. As a result of the sale, Burrell and Elliott received proceeds of $1,600,000.00 and $1,400,000.00, respectively. On April 1, 2005, PPS changed its name to BER Care, Inc. ("BER Care"). Despite having no ongoing business activities or assets, BER Care maintained a bank account with First–Citizens Bank ("BER Care account").

Leading up to its bankruptcy filing, Caremerica began experiencing financial difficulties and began randomly transferring funds between its centralized operating account and the accounts of entities it managed. Specifically, funds that were credited to one entity would be transferred to another entity to pay its outstanding obligations. Caremerica was, essentially, robbing the accounts of various entities it owned or managed to pay the obligations of another. These transfers were made by Stanley E. Brunson, Jr., Caremerica's in–house accountant, at the instruction of Burrell and Elliott. From the first quarter of 2003 through the fourth quarter of 2006, Caremerica failed to pay employment taxes to the Internal Revenue Service ("IRS") and the North Carolina Department of Revenue ("N.C. Dept of Revenue") for the various assisted living facilities it owned and operated. In lieu of paying these employment taxes, Caremerica had willfully paid other obligations. Caremerica's total unpaid employment tax liability to the IRS, excluding penalties and interest, exceeded $4,500,000.00. During the summer of 2005, the IRS and N.C. Dept of Revenue began demanding that Caremerica bring their tax filing and payments in compliance. After Caremerica failed to provide financial documentation, file tax returns and pay outstanding taxes, the IRS and the N.C. Dept of Revenue began threatening to seize assets and issuing notices of tax liens to the

numerous entities owned and controlled by Caremerica.

Between September 1, 2005 and March 31, 2006, Caremerica used the BER Care account in a scheme to hinder collection efforts by the IRS and N.C. Dept of Revenue and to avoid levies of its central operating account by the IRS and the N.C. Dept of Revenue. Funds from Caremerica's central operating account were transferred to the BER Care account and used to directly pay obligations owed by Caremerica and the other entities it owned and managed.

On September 15, 2006, Caremerica, Caremerica Adult Care, The Meadows of Hermitage, The Meadows of Fayetteville, and The Meadows of Wilmington (collectively "debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which were all subsequently converted to cases under chapter 7. On February 4, 2008, as amended on May 16, 2008, the court entered an order allowing the substantive consolidation of all of the cases and appointed the trustee to administer the debtors' cases under the case of Caremerica, Inc., Case No. 06–02913–8–JRL.

The multi–count complaint initiating this adversary proceeding was filed by the trustee on September 14, 2008, seeking avoidance and recovery of preferential and fraudulent transfers made to BER Care, as a conduit, pursuant to § 547 and § 548 of the Bankruptcy Code. The complaint was subsequently amended on August 26, 2009, following this court's order in <u>Angell v. BER Care, Inc. (In re Caremerica, Inc.)</u>, 409 B.R. 737 (Bankr. E.D.N.C. 2009). Among the transfers challenged by the trustee were those allegedly transferred by the debtor to BER Care and then subsequently transferred to the remaining defendants. The amended complaint sought avoidance and recovery, as fraudulent, the funds transferred and deposited by Caremerica in the BER Care account and the subsequent transfers BER Care made to made to the various entities also named as defendants, including Adcar, Inc. ("Adcar"), First Eastern, and Powell Properties of Durham County as

4

preferential transfers.

On February 22, 2012, the court bifurcated this adversary proceeding into two separate phrases ("bifurcation order"). The first phase involved the avoidance of the approximately 509 transfers Caremerica made to BER Care ("first phrase"), specifically, $5,216,167.88 that was transferred or deposited into the BER Care account between September 2, 2005 and March 31, 2006. These transfers and deposits into the BER Care account were from the Caremerica's central operating account and the various accounts of assisted living facilities it managed. Assuming and to the extent that the trustee was successful in avoiding these transfers and deposits into the of BER Care account, the second phase of the adversary proceeding would proceed with the avoidance and recovery of funds transferred from the BER Care account to various defendants on account of Caremerica's obligations and those of the various assisted living facilities and entities it oversaw ("second phase").

On January 14, 2013, First Eastern and Powell Properties of Durham, recipients of transfers from the BER Care account, filed a motion for partial summary judgment with respect to all of the trustee's claims involved in the first phase. Their motion, however, was rendered moot by the court–approved compromise between the trustee, First Eastern and Powell Properties of Durham on April 3, 2013. Subsequent to its bifurcation order, the court has also approved compromises between the trustee and numerous other defendants in this adversary proceeding. On April 1, 2013, the court entered an order allowing the trustee's motion for approval of a compromise executed between the trustee and Institutional Food House, Inc. This court also approved a compromise reached between the trustee and Carolina Long Term Care, LLC d/b/a Carolina Care, LLC. Between March 11, 2013 and March 21, 2013, the trustee also stipulated to the dismissal with prejudice of

5

any and all claims previously asserted against Pinewood Associates, a General Partnership, Pinewood of Pink Hill, LLC, the City of Kinston and the City of Wilson.

In his response to the partial motion for summary judgment, the trustee filed the cross motion for summary judgment currently before the court, seeking to establish, as a matter of law, that the funds transferred and deposited into the BER Care account between September 2005 and March 2006, are avoidable as actual and constructively fraudulent transfers.  The certificate of service accompanying the trustee's cross–motion for summary judgment indicates that, on March 5, 2013, BER Care's registered agent was served via first class mail with a copy at its designated post office box in Kinston, North Carolina.  Despite receiving a copy of the cross–motion for summary judgment, BER Care failed to provide a response and, therefore, it has not provided any evidence to refute the evidence offered by the trustee.

Fed. R. Civ. P. 56(c), made applicable to proceedings in bankruptcy by Fed. R. Bankr. P. 7056, states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In making this determination, the court must resolve all conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When ruling on a motion for summary judgment, a trial judge has an "affirmative obligation . . . to prevent 'factually

unsupported claims and defenses' from proceeding to trial." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

> Section 548 of the Bankruptcy Code
>
> permits the trustee to avoid, as actual[] or constructively fraudulent, any transfer of a debtor's interest in property within two years of the petition date, provided the debtor "received less than reasonably equivalent value in exchange for such transfer" and either:
>> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>
>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Angell v. Montague Farms, Inc. (In re Tanglewood Farms, Inc. of Elizabeth City), AP No. 12–00202, 2013 WL 1619390, at *3 (Bankr. E.D.N.C. Apr. 15, 2013) (quoting 11 U.S.C. § 548(a)(1)).

The trustee asserts that BER Care was the recipient and initial transferee of actual and constructively fraudulent transfers made by the Caremerica into the BER Care account, pursuant to § 548(a)(1) and § 550 of the Bankruptcy Code. The affidavits, the declaration of Burrell, Brunson's deposition transcript, federal criminal sentencing memorandums, discovery responses and other materials submitted by the trustee along with his cross motion for summary judgment demonstrate that, as a matter of law, the funds transferred and deposited into the BER Care account by

Caremerica are avoidable pursuant to 548(a)(1)(A) and (B) of the Bankruptcy Code.  Based on the foregoing, the trustee's cross motion for summary judgment is **ALLOWED.**  Accordingly, the trustee is directed to proceed with the second phase in accordance with the bifurcation order.

**END OF DOCUMENT**